**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| **JOSE E. RAMOS,**<br>**Plaintiff,**<br><br>**v.**<br><br>**VICTORIA D. KIJAKAZI,[1]**<br>**ACTING COMMISSIONER OF**<br>**SOCIAL SECURITY,**<br><br>**Defendant.** | ) | **CIVIL ACTION**<br>**NO. 18-40161-TSH** |

**MEMORANDUM OF DECISION AND ORDER**
**ON PLAINTIFF'S MOTION TO JUDGMENT ON THE PLEADINGS AND**
**DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**
**March 31, 2022**

**HILLMAN, D.J.**

This is an action under 42 U.S.C. §§ 405(g), 1383(c)(3) of the Social Security Act (the Act), to review the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or "SSA") denying the application of Jose E. Ramos ("Plaintiff") for Social Security Disability Benefits and Supplemental Security Income. This Memorandum of Decision and Order addresses Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) and the Commissioner's Motion to Affirm the Commissioner's Decision (Docket No. 22)[2]. For the reasons set forth below, Plaintiff's motion is ***denied*** and Defendant's motion is ***granted***.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted as the defendant in this matter.
[2] A transcript of the Social Security Administration Official Record ("AR.") has been filed with the court under seal. (Docket No. 10). Citations to the AR page numbers are those assigned by the agency and appear on the upper right corner of each page.

**Procedural History**

Plaintiff applied for benefits on August 10, 2015, alleging disability beginning on July 30, 2015. (AR. 275-89). The Commissioner denied these claims initially and on reconsideration. (AR. 81-96, 99-116). At Plaintiff's request, an administrative law judge (ALJ) held a hearing on August 4, 2017, at which an impartial vocational expert and Plaintiff, represented by counsel, appeared and testified. (AR. 50-80). On February 23, 2018, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act from July 30, 2015 through the date of the decision. (AR. 9-29). The ALJ's decision became final and subject to judicial review after the Appeals Council denied his request for review on July 25, 2018. (AR. 1-8).

It is Plaintiff's burden to prove that he is disabled under the Social Security Act. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Plaintiff bears the burden of production and persuasion at steps one through four of the sequential evaluation process, *Freeman v. Barnhart*, 274 F.3d 606, 608 (1st Cir. 2001), including the burden of establishing the scope of his residual functional capacity ("RFC"), see *Yuckert*, 482 U.S. at 146; *Vazquez v. Sec'y of Health & Human Servs.*, 683 F.2d 1, 2 (1st Cir. 1982); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).

The Commissioner's findings at each step are conclusive as long as they are supported by substantial evidence and the Commissioner has applied the correct legal standard. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). It is the ALJ's responsibility to weigh conflicting evidence and resolve issues of credibility. *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981). "Substantial evidence review is more deferential than it might sound to the lay ear: though certainly 'more than a scintilla' of evidence is required to meet the benchmark, a preponderance of evidence is not. Rather, '[w]e must uphold the [Commissioner's] findings . . . if a reasonable mind,

reviewing the evidence in the record as a whole, could accept it as adequate to support [her] conclusion.'" *Purdy v. Berryhill*, 887 F.3d 7, 13 (1st Cir. 2018) (*quoting Rodriguez*, 647 F.2d at 222) (alterations in original). This is true "even if the record arguably could justify a different conclusion." *Rodriguez Pagan v. Sec'y of Health & Human Servs*., 819 F.2d 1, 3 (1st Cir. 1987); *see Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981) ("[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.").

Based on Plaintiff's conditions, which include a history of osteochondritis dessicans (OCD) of the left knee, a joint condition in which bone underneath the cartilage of a joint dies due to lack of blood flow, and mild obesity, the ALJ found that Plaintiff would be limited to performing sedentary work, which requires occasional walking and standing. (AR. 18-20). Plaintiff was 36 years old on his August 10, 2015 benefits application date. (AR. 275-89). He last worked as a machinist in a plastics factory until July 2015. (AR. 63, 319).

Plaintiff has a history of left knee pain and swelling caused by OCD and underwent two surgeries, both performed by Andreas H. Gomoll, M.D. (AR. 669, 671). The first, performed on February 24, 2014, was the fixation of an OCD lesion with Acutrak screws. (AR. 671). The second, performed on April 4, 2014, was the removal of the screws. (AR. 669).

From 2013 through July 2016, Plaintiff's primary care provider was Jeremy Morrison, D.O. (AR. 406-24, 462-66, 609-17). In February 2015 Dr. Morrison wrote a letter to his workplace explaining that he needed to limit his time standing and should have a ten-minute break from working every hour. (AR. 462). In April 2015, Dr. Morrison noted that Plaintiff had a limited range of motion and "pain, especially with working on [his] feet." (AR. 423).

While Plaintiff was still employed at the plastics factory, in May of 2015, he went to the Emergency Department at Health Alliance Hospital ("HAH") with ongoing left knee pain and the next month saw an orthopedist regarding his left knee pain which was worse with prolonged use. On July 23, 2015, Dr. Morrison observed that there was "no way to repair current damage" to Mr. Ramos's knee and that his job had given him notice that he would be let go due to his inability to meet demands with his need to sit down so much. (AR 412).

## **The ALJ's Decision**

The ALJ found at Step One that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and that he was insured for Title II benefits through June 30, 2017. (AR 17). At Step Two, he determined that Plaintiff had the following severe impairments: history of OCD of the left knee, status post two surgical interventions and mild obesity. (AR 18). He found at Step Three that Mr. Ramos did not meet a disability listing (AR 20) and at Step Four that he had the RFC to perform the full range of sedentary work (*Id*.). The ALJ found that he was unable to perform his past relevant work as a heavy equipment operator and machine operator but found that he was not disabled at Step Five because he could perform the jobs of packager, small parts assembler and inspector per the RFC. (AR 22-23).

## **Discussion**

The parties are familiar with the factual history of this case, the standard of review, and the applicable five-step sequential analysis. Accordingly, the court will review the procedural and substantive history of the case as it relates to the arguments set forth by the claimant.

## **Standard of Review**

Under the Social Security Act, this Court may affirm, modify, or reverse the final decision of the Commissioner, with or without remanding the case for a rehearing. 42 U.S.C. §

405(g). The Commissioner's factual findings, "if supported by substantial evidence, shall be conclusive," *id.*, because "the responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ." *Seavey v. Barnhart*, 276 F.3d 1, 9 (1st Cir. 2001) (citation omitted); *see Evangelista v. Sec'y of Health & Human Servs.*, 826 F.2d 136, 143-44 (1st Cir. 1987). Therefore, "[j]udicial review of a Social Security Claim is limited to determining whether the ALJ used the proper legal standards, and found facts based on the proper quantum of evidence." *Ward v. Commissioner of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).

Plaintiff contends that the ALJ's evaluation of the medical evidence was based upon errors of law and not upon substantial evidence and that the ALJ failed to conduct a function by function analysis before expressing the Plaintiff's RFC. The Commissioner counters that substantial evidence supports the ALJ's finding that Plaintiff retained the residual functional capacity for unskilled tasks involving no more than occasional changes in the work setting, requiring no interacting with the public, and dealing with things rather than people, and in doing so, the ALJ reasonably weighed the opinion evidence.

*Medical Opinion Evidence*

Plaintiff first argues that in determining Plaintiff's RFC, the ALJ improperly weighed the medical opinions of Plaintiff's treating sources and the non-examining state agency consultant. An ALJ must "always consider the medical opinions in [the] case record," 20 C.F.R. §§ 404.1527(b); 416.927(b), and SSA regulations prioritize the opinions of a claimant's treating sources. *See* 20 C.F.R. §§ 404.1527(c)(1); 416.927(c)(1) (stating that "[g]enerally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you"). The treating source rule provides that the

ALJ should give "more weight" to the opinions of treating physicians because "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2). Controlling weight will be given to a treating physician's opinion on the nature and severity of a claimant's impairments if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. *Id*.

In certain circumstances, however, the ALJ does not have to give a treating physician's opinion controlling weight. *Arroyo v. Sec'y of Health & Human Servs.*, 932 F.2d 82, 89 (1st Cir. 1991) (observing that "[t]he law in this circuit does not require ALJs to give greater weight to the opinions of treating physicians"). The regulations allow the ALJ to discount the weight given to a treating source opinion where it is inconsistent with other substantial evidence in the record, including treatment notes and evaluations by examining and non-examining physicians. *Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D.Mass. 2004); 20 C.F.R. § 404.1527(c)(2)-(4); 416.927(c)(2)-(4); *see also* SSR 96-2p, 1996 WL 374188, at *2. Where controlling weight is not given to a treating source opinion, the ALJ considers an array of factors to determine what weight to grant the opinion, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the degree to which the opinion can be supported by relevant evidence, and the consistency of the opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(2)-(6); 416.927(c)(2)-(6). Further, the regulations require adjudicators to explain the weight given to a treating source opinion and the reasons

supporting that decision. *See* 20 C.F.R. § 404.1527(c)(2); 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

The ALJ is required, however, to provide "good reasons" for deciding to give the treating source's opinion the weight he did and must state "specific reasons for the weight given to the treating source's medical opinion ... and must be sufficiently specific to make [it] clear to any subsequent reviewers[.]" SSR 96-2p, 1996 WL 374188, at *5; see also, e.g., *Shields v. Astrue*, 2011 WL 1233105, at *8 (D.Mass. Mar. 30, 2011) (Dein, M.J.) ("Because the [ALJ] supported his rejection of the treating physician's opinions with express references to specific inconsistencies between the opinions and the record, [his] decision not to grant [the treating physician's] opinions significant probative weight was not improper."). *Sanchez v. Colvin*, 2015 WL 5698413, at *7 (D.Mass. Sept. 28, 2015). "Inconsistencies between a treating physician's opinion and other evidence in the record are for the ALJ to resolve." *Roshi v. Comm'r of Soc. Sec.,* 2015 WL 6454798, at *6 (D. Mass. Oct. 26, 2015), quoting *Lee v. Astrue*, 2011 WL 2748463, at *11 (D.Mass. July 14, 2011). The hearing officer is not required to, nor could she reasonably, discuss every piece of evidence in the record*.* *Sousa v. Astrue*, 783 F. Supp. 2d 226, 234 (D.Mass. 2011), citing *National Labor Relations Bd. v. Beverly Enterprises–Massachusetts,* 174 F.3d 13, 26 (1st Cir.1999). Indeed, "[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party," *Ramos-Birola v. Astrue*, 2012 WL 4412938, at *20 (D.Mass. Sept. 24, 2012) (alteration in original), *quoting N.L.R.B. v. Beverly Enters.-Mass., Inc*., 174 F.3d 13, 26 (1st Cir. 1999) (internal quotation marks omitted).

Plaintiff contends that the ALJ did not give good reasons for rejecting a medical opinion from his treating physician, Dr. Dylan Estes. Plaintiff's Memorandum in Support of Motion for Judgment on the Pleadings (Pl. Brief) (Docket No. 16 at 10-13). Dr. Estes authored four medical opinions in the form of letters between July 19, 2017 and October 1, 2017, but only his third opinion, dated August 15, 2017, is at issue in this case. (AR. 47, 663, 667, 686). In the letters, Dr. Estes advised Plaintiff to elevate his left leg for an hour at a time, three times daily. *Id.*. The ALJ properly rejected this work-preclusive limitation because it is not found in any of Plaintiff's treatment notes. (AR. 21, 66-68).

Plaintiff testified that Drs. Morrison., Estes, and Dr. Jordan Nagle, a physician who works in the same practice as Dr. Morrison, told him to elevate his leg to waist height whenever he experienced pain, however this recommendation is not found in any of the doctors' treatment notes. (AR. 65-67). Plaintiff has not produced any treatment notes from the author of the opinion, Dr. Estes, and the treatment plans from Drs. Morrison and Nagle only advised Plaintiff to take medications (e.g., Percocet and Gabapentin), perform daily home exercises, and use a knee brace. Nowhere in those treatment notes was Plaintiff advised to elevate his leg. *Id*. Moreover, as the ALJ discussed, Plaintiff's pain was reportedly controlled by his medications alone. (AR. 19). The ALJ's finding was proper. *See e.g., Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D.Mass. 2004) (finding that relevant regulations "permit the ALJ to downplay the weight afforded a treating physician's assessment of the nature and severity of an impairment where ... it is internally inconsistent or inconsistent with other evidence in the record including treatment notes and evaluations by examining and non-examining physicians").

*Function by Function Analysis*

Plaintiff's next contends that the ALJ failed to perform a function-by-function analysis of his ability to "sit without breaks, to lie down, or to elevate his leg." Generally, the Plaintiff alleges that the ALJ failed to explain in the RFC how the evidence supports his conclusion regarding the Plaintiff's ability to sit without breaks, to lie down and to elevate his leg. Further, Plaintiff's argument extends to his subjective complaints of pain and that the ALJ failed to include the VE's testimony that he would be unemployable if he took 10 minutes break each hour.

Social Security Ruling 96-8p, which discusses the process of determining an individual's RFC, requires the RFC assessment to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" before expressing RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy and very heavy." SSR 96-8p, 1996 WL 374184, at *1. The function-by-function analysis focuses on the individual's "remaining exertional and nonexertional capacities" in view of the limitations and restrictions imposed by the medically determinable impairment(s). *Id*. at *5. "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." *Id*. The ruling mandates separate consideration of each of these work-related functions "even if the final RFC assessment will combine activities ... ." *Id*.

Although, the ALJ failed to expressly perform the function-by-function analysis called for by SSR 96–8p, he made a series of findings that demonstrate by implication that he performed the requisite assessment. *See Gaudet v. Astrue*, 11-11894-RGS, 2012 WL 2589342,

at *6 (D. Mass. July 5, 2011). A proper RFC assessment addresses both the exertional (sitting, standing, walking, lifting, carrying, pushing, and pulling) and non-exertional capacities of a claimant. *See* SSR 96–8. The ALJ concluded that Plaintiff had the RFC to perform sedentary work.

The ALJ "[is] not required to credit the claimant's testimony" and is permitted to rely on personal observations of the claimant's demeanor during the hearing in making credibility determinations. *See Del Rosario v. Colvin*, No. 13–30017, 2014 WL 1338153, at *7 (D.Mass. Mar. 31, 2014) (recognizing the established principle that the ALJ "is not required to take the claimant's assertions of pain at face value" (*citing Bianchi v. Sec'y of Health & Human Servs*., 764 F.2d 44, 45 (1st Cir. 1985))); *Johnson v. Apfel*, 240 F.3d 1145, 1147–48 (8th Cir. 2001); *Reinertson v. Barnhart*, 127 Fed.Appx. 285, 290 (9th Cir. 2005) ("Although an ALJ's personal observations, standing alone, cannot support a determination that a claimant is not credible, they may form part of that determination.").

Here, the ALJ explained in detail his rationale for not crediting Plaintiff's testimony regarding pain. First, he found that that Plaintiff's allegations about the intensity, persistence and limiting effects of his symptoms were "not consistent with the medical and other evidence in the record." (AR. 21). For example, although Plaintiff testified that his leg goes numb while sitting, he routinely denied numbness to his providers. The ALJ noted that at the hearing, Plaintiff testified that he applies heat and cold and takes his medications for pain relief. *Id*. The ALJ based his findings on the objective medical record which from which he felt there was an "overwhelming dearth of contemporary evidence from any treating source … most importantly in the plan section if those notes" noting those extreme limitations. *Id*. Furthermore, no objective work. While Drs. Estes and Morrison both opined in the letters that Plaintiff "unable to work."

for the "foreseeable future," such a determination is not within the province of even the treating physician but is reserved for the ALJ (AR. 21; 20 C.F.R. § 404.1527(d)(l)) (it is the Commissioner who is 'responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability.')

The test here is to determine whether the Commissioner's decision was supported by substantial evidence. A claimant is not guaranteed disability benefits from the presence of an impairment; she must demonstrate an inability "to participate in any substantial gainful activity by reason of any medically determinable physical or mental impairment ... ." *Rohrberg v. Apfel*, 26 F.Supp.2d 303, 309 (D.Mass. 1998) (*citing* 42 U.S.C. § 423(d)(1)(A) and 1382c (a)(3)(A) ). The impairment also must be of such severity that the claimant is not only unable to perform her previous work but also, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Id*. Accordingly, the Commissioner is entitled to judgment in her favor.

**Conclusion**

For the reasons set forth above, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 15) is ***denied*** and Defendant's Motion for Order Affirming the Commissioner's Decision (Docket No. 22) is ***granted***.

**SO ORDERED**.

/s/ *Timothy S. Hillman*
TIMOTHY S. HILLMAN
UNITED STATES DISTRICT JUDGE